WILLARD F. KEHNAST,
Plaintiff,

*vs.*

JOSEPH KEHNAST,
Defendant,

EDMUND KEHNAST, ROSE KEHNAST, EMMA KEHNAST and JOSEPH KEHNAST,
Interveners.

*New Castle, January 3, 1952.*

*Vincent A. Theisen,* Wilmington, for plaintiff.

*Anthony F. Emory,* Wilmington for defendant.

*H. Albert Young* and *David B. Coxe,* Jr., Wilmington, for interveners Edmund Kehnast and Rose Kehnast.

*John T. McEvilly,* Wilmington, for interveners Emma Kehnast and Joseph Kehnast.

SEITZ, CHANCELLOR: This is an action by plaintiff, one alleged partner, seeking an accounting from defendant, his alleged co-partner. Subsequently other parties were permitted to intervene to assert that they were either co-owners of the "family enterprise," additional partners, or creditors.

The questions presented for decision are three in number: (1) What was the legal nature of the business conducted under the name of the West End Coal Co., (2) Who were the parties legally embraced within that legal relationship, and (3) What subject matter was included within the business as legally defined?

The first two questions can be discussed and answered together. To arrive at these answers it is important to consider the history of the business known as West End Coal Co.

Sometime in 1939 the plaintiff began to participate in

the operation of a retail coal and oil delivery business. Operations were conducted on a plot of land owned by his father and mother—two of the interveners here. The parents' home also served as the business office. However no rental was ever charged for the office or land although plaintiff testified he agreed to furnish coal, gas, electricity and food for his parents. These conditions continued throughout the years and up until this action was commenced except that I doubt whether plaintiff kept his promise in full.

Plaintiff, who is defendant's brother, handled the records, such as they were, almost exclusively. The same was true of the money. He also did some of the driving. While there is some dispute as to the extent of his services, there is no doubt that from sometime in 1939 until the break-up on or about May 1, 1950, plaintiff participated in the business. When the business first came by its name of West End Coal Co. is unimportant.

The defendant devoted much of his time during this same period to the coal and oil delivery aspects of the business. However, the defendant also spent a substantial amount of his time, particularly after 1946, selling and installing oil burners. Plaintiff contends that this part of defendant's work was part of the partnership business known as West End Coal Co. Defendant says that the oil burners installation business was his own private business and not a part of the West End Coal Co. This issue is part of the third question to be resolved.

The coal and oil delivery business grew in volume despite the very unbusinesslike manner in which it was conducted. For instance, sales were in excess of $100,000 per year, yet no bank account was kept. Plaintiff literally operated largely out of his pocket. At various times the interveners, being the parents of plaintiff and defendant, as well as another brother and a sister-in-law, performed various miscellaneous services over the years for the business. They worked on the trucks, took trips for the coal and oil, an-

swered the phone, etc. However, it is clear that these acts were spontaneous and irregular and the evidence fails to disclose that the interveners performed these services with any expectation of compensation. Nor did they receive any compensation. Truly the business was a family affair in a sense, but that was not because the business was being operated for the benefit, legally speaking, of all of the family. Those who benefited directly from the business as owners were the plaintiff and the defendant and I am inclined to believe that the plaintiff benefited more than the defendant because he controlled the purse strings. While plaintiff may have done some of the dastardly things with which he is charged by defendant and interveners, and I believe he did, nevertheless, the facts here recited are admittedly true and show to my satisfaction that plaintiff and defendant alone operated the business as partners. They filed partnership tax returns and took out a partnership license for the coal and oil delivery service. Defendant's attempts to deny the partnership relationship is unimpressive at best. The same is true of defendant's testimony that he worked for years and never received any of the profits. Although, I do believe that plaintiff took the bulk of such profits.

■ I conclude that plaintiff and defendant were partners in their operation of the West End Coal Co.

■ Are any of the interveners entitled to claim an interest as co-owners or co-partners of the West End Coal Co.? I think not. As stated, they performed miscellaneous services over many years but they never sought nor received compensation therefor and their services were rendered at highly irregular intervals. True the mother and father provided the premises and office for the business but there is no evidence that this was anything more than the benevolence of parents for their children. The apparent lack of gratitude on plaintiff's part and the reciprocated resentment have added coals to the emotional fire which has almost consumed the truth in this case.

The contention that it was a family enterprise is to a degree true, but, legally, I believe the family aspects of the matter do not alter the dominant facts which point to a partnership of plaintiff and defendant, viz., control of the business and profits by plaintiff and defendant alone.

I conclude therefore that the business of the West End Coal Co. at the date of the dispute between plaintiff and defendant, and at all times here pertinent, was a partnership of which plaintiff and defendant were the sole partners. This partnership I imply from the facts and not from any oral agreement. See *Beecham v. Dodd*, 3 *Har.* 485; and compare 46 *Del. Laws, Chapt* 229 §§ 15, 16.

We now consider what business and property were included within the West End Coal Co. partnership. Specifically, I must determine (1) whether certain trucks belong to the partnership, (2) whether certain money was lent to the partnership, and (3) whether the oil burner installation business was part of the partnership business.

The intervener Edmund Kehnast contends that three trucks were purchased in his name as owner and were lent for use in the business. Plaintiff contends that the trucks belonged to the partnership. Plaintiff explains that the titles were taken or transferred into the name of Edmund Kehnast because plaintiff was having serious domestic troubles. This is hardly an appealing explanation but that fact does not require the rejection of the testimony.

One truck in dispute was purchased in 1946 for $2500. The receipt for the money was given in the name of Edmund Kehnast and title taken in his name. Edmund claims that he and his wife Rose used cash savings kept in their room to pay for this truck. Plaintiff says the truck was paid for with partnership money given to Edmund.

While title to the truck and the receipt for the payment were in Edmund's name, it is not denied that the truck was used in the partnership business and that no compensation

was paid Edmund for its use. This condition existed for several years. The testimony of the plaintiff and Edmund is in direct conflict and in order to resolve the conflict, one must pass upon their veracity. Plaintiff's contention that the truck was purchased for the business and placed in Edmund's name because of plaintiff's marital difficulty has some plausibility. An even more plausible reason comes from the trouble plaintiff caused by refusing, on occasion, to permit "his" trucks to move. However, I place principal reliance for my conclusion that Edmund is not the owner of the truck on the improbability of such a fact in view of the surrounding circumstances. Thus Edmund said he accumulated this substantial sum of cash and kept it in his room. He allegedly saved this sum despite the fact that he had a rather small annual income and had substantial financial commitments. The legacy to Rose does not explain this situation. Also, only a few months before the truck was purchased, Edmund and Rose purchased an automobile and financed it "on time." The explanation for financing their car rather than paying cash from their savings is unconvincing.

The cumulative effect of the evidence leads me to conclude that the truck purchased from the Ayers Coal Co. was actually the property of the partnership.

Edmund next contends that he paid $100 cash and gave a $500 check for another truck and that still later he paid $220 for a body for it. Once again it appears that this truck was used in the business and that Edmund received no compensation for its use. Plaintiff says partnership money was used to purchase this truck. It appeared that Edmund as a mechanic was familiar with trucks and undoubtedly helped in deciding whether a certain truck should be purchased. However, I believe he was only a "front" man. The circumstances militate against the conclusion that these purchases were made with his money. I conclude that this property also is a partnership asset.

Title to the trucks should be conveyed to the receiver.

Edmund and Rose also claim that they advanced money for a new engine for a truck and also for certain coal and oil shipments received by the partnership. Plaintiff flatly denies this claim. While such payments are supported by checks drawn on the account of Rose Kehnast, this is explained by the fact that the partnership had no bank account and money was often given to Rose to deposit so that a partnership obligation could be paid by check. I conclude that their claim under this item must be rejected.

I am frank to say that as to these items, it is most difficult to decide where lies the truth. All the parties to this action have been guilty of making statements which are either false or misleading. I have therefore tried to base my conclusion for the most part on undisputed facts or admissions rather than upon the untrustworthy conflicting testimony.

We come finally to determine whether or not the oil burner installation business was part of the partnership business.

Once again there are conflicting factors pointing to opposite results in connection with this issue. As nearly as I can reconstruct them, the facts concerning the oil burner installation business follow. The defendant admittedly was the only partner familiar with this type of business. He obtained a license in his own name to do this type of work and actually did such work alone long before the time in 1946 when plaintiff contends defendant's installation operations came under the partnership. However, it is not disputed that the installation business was carried on from the same address as was the coal and oil delivery business. The same phone listing was used. The partnership truck was used in connection with the installation business and defendant had no other trucks. The men used to install the burners were partnership employees. Agreements were drawn in the name of West End Coal Co. and checks in payment were made out to West End Coal Co. Defendant admits that on occasion he dealt with suppliers as a representative of the company. In the

phone book and on calendars the burner business was advertised as part of the company. All Social Security taxes were paid by the partnership.

Plaintiff claims, and in view of defendant's position here, it would seem to be true that defendant never turned over to him any of the money from the burner business. Plaintiff also testified that he gave the defendant money for burners and received no return therefrom. Plaintiff contends that arguments developed over the funds put into the burner business and that these arguments caused the final break-up of the partnership. Defendant denies that plaintiff ever gave him such money and denies that there were arguments concerning the burner business. Defendant points out that plaintiff did not claim in his original complaint that the burner business was a part of the partnership; that this claim is but an afterthought. Defendant points out that plaintiff did not do any work in the installation business, did not handle the records of the burner business, did not have any license for this type of work and never received any money therefrom.

The solution to the problem presented by the confused picture just narrated, if it is to be a just one, must be arrived at after giving due weight to the family situation including particularly the personalities of the plaintiff and the defendant. My evaluations of the plaintiff and defendant on the witness stand lead me to conclude that plaintiff was the "front" man while the defendant was the "work horse." It is impossible to separate the operations of the delivery business from the installation business. However, we are not here dealing with a situation of two men involved in an arm's length business transaction. Like Topsy, this business just "growed." The close family relationship which pervaded all aspects of the business helps to obscure the legal niceties which are so comforting to a trial judge.

Despite the substantial amount of evidence from which this court might infer that the installation business was part

of the partnership, I conclude that the burner installation business was in fact the defendant's separate business. I base my conclusion on the fact that plaintiff, had he considered it within his domain, was not the type to permit defendant to retain all of the profits from the business for four years without taking drastic action. Nor do I believe that he gave defendant substantial sums of money to use in the installation business without securing some return. That is not in keeping with plaintiff's character. Plaintiff's lack of knowledge concerning the records of the installation business reflects adversely upon his contention because he was the one who kept almost exclusive custody of the records of the delivery business. The fact that the burner business used certain of the company's personnel and assets on occasion is understandable in the light of the family relationship and the background of the West End Coal Company. Even here it is possible that defendant or the interveners "paid the bill." Moreover, I have the distinct feeling that plaintiff, controlling the purse strings as he did, took more than his share of the proceeds from the oil and gas deliveries for his personal use. He found it difficult under these circumstances to object too much to the defendant's action in retaining the burner business profits.

As between plaintiff and defendant there is no doubt that plaintiff was the dominant personality and defendant was a partner almost by sufferance. The manner in which this operation developed leads me to infer that the burner business was operated by the defendant as his own within the loose framework which I have described.

The burner installation business will not be included within the West End Coal Co. partnership. Consequently, there will be no accounting as to this phase of the business.

Defendant will be required to account for the coal, oil and kerosene business from May 1, 1950 until the date when the receiver took over.

Under the circumstances here presented, I do not believe the clean hands doctrine is applicable.

Order on notice.